Filed 1/13/26  Chelico v. TJB Gearys CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BASSAM SAMIH CHELICO, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> TJB GEARYS, LLC, <br><br> Defendant and Respondent. | B331570 <br><br> (Los Angeles County Super. Ct. No. 21SMCV00703) <br> ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING <br><br> (CHANGE IN THE APPELLATE JUDGMENT) |

THE COURT:

The above-entitled opinion filed on December 15, 2025 is modified as follows:

In the second sentence of the first full paragraph on page 4 of the opinion, replace the word "sex" with "age," so the sentence reads:

"On April 13, 2021 Chelico filed a complaint in superior court for unlawful discrimination on the basis of race and age in violation of FEHA. . . ."

In the second sentence of the disposition on page 28 of the opinion, replace the language "Gearys is to recover its costs on appeal" with "The parties shall bear their own costs on appeal. (*Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 950-951.)"

Appellant's petition for rehearing is denied.

There is a change in the appellate judgment.

SEGAL, Acting P. J.          FEUER, J.          STONE, J.

2

Filed 12/15/25  Chelico v. TJB Gearys CA2/7 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BASSAM SAMIH CHELICO, | B331570 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. |
| v. | No. 21SMCV00703) |
| TJB GEARYS, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elaine W. Mandel, Judge.  Affirmed.

Law Office of Nabil E. Chelico and Nabil E. Chelico for Plaintiff and Appellant.

Loeb & Loeb, Michelle M. La Mar and Terry D. Garnett for Defendant and Respondent.

_____

Bassam Samih Chelico appeals from a judgment confirming an arbitration award in favor of his former employer, TJB Gearys, LLC (Gearys), on Chelico's claims for employment discrimination and related causes of action under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.). Chelico contends the trial court erred in compelling him to arbitrate his claims because he did not consent to the arbitration provision in Gearys's employee handbook, and the arbitration agreement was unconscionable. Chelico also contends the court erred in confirming the arbitration award, because the arbitrator was biased against him, committed egregious legal errors, and failed to adjudicate his claim for wrongful termination. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *Chelico's Employment, Termination, and Complaint*

In February 2015 Gearys hired Chelico as a sales consultant at its luxury watch boutique in Century City. Chelico is of Middle Eastern descent and was 49 years old when he was hired. On the day he started his employment, Chelico met with Gearys's human resources manager, Gerrick Pickering, who gave Chelico a copy of Gearys's 37-page employee handbook.

The handbook addressed arbitration in a four-paragraph section on pages 23 and 24 under the heading "**ARBITRATION**" in boldface, underlined, and capital letters. The first paragraph of the section stated, in pertinent part, "Any controversy, dispute or claim between any employee and [Gearys], or its officers, agents or other employees, shall be settled by binding arbitration, at the request of either party. The [c]laims covered by this

arbitration agreement include, but are not limited to, . . . claims for wages and other compensation, . . . and claims for discrimination (including, but not limited to, race, . . . [and] age . . . ), and claims for violation of any federal, state, or other government law, statute, regulation, or ordinance" (except claims relating to worker's compensation and unemployment insurance benefits).

The remaining paragraphs addressed the process for initiating arbitration, the conduct of the arbitration under California law (including a provision for the parties to conduct "reasonable discovery" and a requirement the arbitrator make written findings), and judicial review ("unreviewable for error of law or legal reasoning of any kind"). An attorneys' fees provision stated, "The arbitrator shall determine if there is a prevailing party and the prevailing party shall be awarded reasonable attorney's fees." The final provision stated, "Both the [c]ompany and employees understand . . . they are giving up any right that they might have to a judge or jury trial with regard to all issues concerning employment. No employee or other [c]ompany representative can modify this agreement . . . ."

On February 16, 2015 Chelico signed a two-page "Acknowledgment and Agreement" (the agreement), which repeated the entirety of the four-paragraph arbitration section of the handbook, but without a heading stating "Arbitration."[1] (Boldface, underlining, and capitalization omitted.) The agreement stated, in relevant part, "Employee acknowledges receipt of the [c]ompany's handbook and agrees to read it

---

[1]      The unsigned agreement was also printed on the final two pages of the handbook.

promptly. . . . Employee understands . . . [he] is expected to abide by all the procedures, policies and rules contained in the handbook and understands that failure to do so can result in discipline, including termination." It continued, "Employer and [e]mployee agree that their employment relationship is at will and that either one may terminate the employment relationship at any time, for any reason, and without cause." At the end of the agreement, immediately following the four arbitration paragraphs, Chelico and Pickering printed their names, signed, and dated the agreement.

On August 15, 2019 Gearys terminated Chelico's employment, effective immediately, on the asserted basis that he sold a watch in violation of company policy. On April 13, 2021 Chelico filed a complaint in superior court for unlawful discrimination on the basis of race and sex in violation of FEHA (Gov. Code, §§ 12940, subd. (a), 12941), harassment and failure to prevent discrimination and harassment in violation of FEHA (*id.*, § 12940, subds. (j) & (k)), and wrongful termination in violation of FEHA and public policy. Chelico also asserted claims for Labor Code violations, including for unpaid wages and waiting period penalties (Lab. Code, §§ 201, subd. (a), 203, subd. (a)), failure to provide meal and rest breaks (*id.*, § 512), and failure to provide accurate, itemized wage statements (*id.*, § 226, subd. (a)).[2]

---

[2] Chelico's complaint named three defendants: TJB Gearys, LLC; its president and chief executive officer, Thomas Blumenthal; and Gearys Beverly Hills. Chelico's arbitration demand omitted Gearys Beverly Hills, which, according to Gearys, is not a business entity. The arbitrator sustained Blumenthal's motion to dismiss the demand. On August 28, 2023 the trial court dismissed Blumenthal and Gearys Beverly Hills

4

Chelico alleged in his complaint that he was an exemplary employee and was terminated under the false pretext that he sold a Rolex watch without removing its manufacturer tags in violation of a then-unofficial sales policy.[3]  He asserted he was harassed by his supervisor and passed over for promotions because of his age and race; after he was terminated, Gearys hired a younger employee of a different racial background to replace him.

B.    *Gearys's Motion To Compel Arbitration*

On May 14, 2024 Gearys filed a motion to compel arbitration of Chelico's entire complaint and for a stay of the court proceedings.  In his supporting declaration, Pickering attached a copy of the agreement bearing Chelico's and Pickering's signatures.  Pickering declared that in February 2015 he provided the handbook and agreement to Chelico and instructed Chelico to review them.  Pickering gave Chelico an

---

with prejudice and amended the judgment confirming the arbitration award to include their dismissal.  Although Chelico appeals from the amended judgment, he does not challenge the dismissals, and Blumenthal and Gearys Beverly Hills are not parties to this appeal.

[3]    As stated in Gearys's motion for summary judgment, the Rolex company and Gearys required Gearys to remove "all plastic factory tags and stickers" at the time of sale to prevent the unauthorized resale of new watches at significant markups in secondary markets.  The arbitrator found Rolex notified Gearys in August 2019 that a watch it sold was being offered in secondary markets with stickers still attached, and Chelico's sales records showed Chelico sold the watch and approximately 20 others to the same customer during a relatively brief period.

opportunity to review the materials and told Chelico to inform him if Chelico had any questions or concerns about the documents. Pickering instructed Chelico to return the signed agreement so Pickering could place it in Chelico's personnel file. Chelico signed and returned the agreement on February 16, 2015. Chelico did not raise any questions or concerns regarding the handbook or the agreement.

In his opposition, Chelico argued the document he signed was only a confirmation he received and agreed to review the handbook, not an agreement to arbitrate any disputes with Gearys. And even if the document was an agreement to arbitrate, it was unenforceable because it was procedurally and substantively unconscionable. Chelico argued the prevailing party attorneys' fees provision contravened FEHA's requirement that an employer may recover fees only if "the court finds the [employee's] action was frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so." (Gov. Code, § 12965, subd. (c)(6).) In a supporting declaration, Chelico averred that when he was hired on February 16, 2015, he met with Pickering in Pickering's office and "was given a bunch of documents that I had to review and sign during that meeting which lasted . . . for about 10-15 minutes." During the meeting, "the reference to arbitration was not specifically brought to [Chelico's] attention." However, Chelico admitted he signed the agreement.

After a hearing, on July 1, 2021 the trial court granted Gearys's motion and referred the matter to arbitration. The court found the two-page signed agreement was a valid arbitration agreement, and therefore, Chelico had the burden to

6

show the agreement was unconscionable.[4]  The agreement "show[ed] mild procedural unconscionability" as an adhesion contract with arbitration terms "buried within a larger document" (the handbook).  However, Gearys presented mitigating evidence that Chelico was offered an opportunity to ask questions and declined to do so, and there was "no evidence of sharp practices or deception" by Gearys.  The court rejected Chelico's argument the agreement lacked mutuality.  The court found the prevailing party attorneys' fees provision was substantively unconscionable, but it could be severed, leaving no unconscionable terms.  The court concluded the "mild degree of procedural unconscionability [was] not enough to prevent enforcement."

C.      *The Arbitration and Award*

On July 22, 2021 Chelico filed a demand for arbitration (demand) with the American Arbitration Association ("AAA").  In his description of his claims on AAA's demand form, Chelico referred to an attached copy of the complaint (with minor modifications from the court-filed version).  Gearys filed an answer with a general denial and affirmative defenses.  Counsel for Chelico (Nabil E. Chelico) and Gearys (Michelle M. La Mar) participated in AAA's arbitrator selection process and submitted a joint list of potential arbitrators.  AAA selected and appointed

---

[4]      There was no court reporter at the July 1, 2021 hearing on Gearys's motion.  The trial court's minute order includes its three-page tentative ruling.  Although the minute order does not expressly state that the court adopted its tentative ruling as the court's final ruling, we, like the parties, regard it as a statement of the court's findings.

7

Sara Adler (the arbitrator) and set the evidentiary hearing for September 2022 in AAA's office in downtown Los Angeles. Denise Crow, based out of AAA's Fresno office, was assigned as the case manager.

Over the next year the parties conducted extensive written discovery and took several depositions. In August 2022 the arbitrator denied Gearys's summary adjudication motion and permitted Chelico to amend his demand to include a claim for interference with his right to family medical leave in violation of the California Family Rights Act (CFRA; §§ 12945.1, 12945.2).[5]

The arbitrator held a three-day evidentiary hearing on the merits of Chelico's claims commencing on September 20, 2022. The parties stipulated that the Labor Code issues had been settled, and Chelico was deemed the prevailing party for the purposes of allocating attorneys' fees for the Labor Code claims, which remained to be resolved. A few days before the hearing, the parties agreed to conduct the hearing remotely over videoconference because a pipe burst and flooded AAA's Los Angeles office.

On November 8 the arbitrator entered an interim award denying Chelico's claims, which the arbitrator grouped into three categories: "harassment," "discrimination," and "CFRA violation." The arbitrator found there was no reasonable basis for Chelico's belief he was discriminated against based on age; there was no evidence of workplace mistreatment rising to the

---

[5] In March 2019 Chelico took four weeks of paid time off to care for his wife, who was hospitalized for cancer treatment, and his children. Chelico contends he used paid time off because Pickering did not explain until Chelico returned to work that he could have taken family medical leave.

8

level of harassment; and, with respect to alleged race and age discrimination, the preponderance of the evidence did not show that Gearys's allegedly discriminatory actions (failing to promote and later terminating Chelico) were pretextual. With respect to Chelico's termination, the arbitrator concluded, "[A]lthough [Chelico] might not have known that failure to remove the [s]tickers was a dischargeable offense, it was conduct that violated the [c]ompany's existing rules. There is no basis in this evidentiary record to conclude that his discharge was substantially motivated by discrimination." The arbitrator also found Chelico's rights to family leave under the CFRA were not infringed, and "[t]he claim that [Chelico] was discharged out of concern that he would take additional leave is unsupported by any evidence here." The arbitrator retained jurisdiction to determine attorneys' fees.

On December 5, 2023 the arbitrator issued the final award addressing the parties' requests for attorneys' fees. The arbitrator denied Gearys's request for attorneys' fees in defending against Chelico's FEHA claims, finding the claims were not frivolous. The arbitrator awarded to Chelico as the prevailing party on his Labor Code claims $12,500 in attorneys' fees, $1,743 in deposition costs, and $3,552 in expert witness fees. The final award stated it was "in full settlement of all claims submitted to this Arbitration" and "[a]ll claims not expressly granted herein are denied."

D.	*Chelico's Petition To Vacate and Gearys's Petition To Confirm the Arbitration Award*

On March 24, 2023 Chelico filed a petition to vacate the arbitration award.[6]  Chelico principally argued the arbitrator and AAA (through case manager Crow) were corrupt and biased against him and his attorney, and the arbitrator committed egregious errors of law and failed to adjudicate Chelico's claim for wrongful termination.  Chelico's attorney, Nabil Chelico, submitted a lengthy declaration describing asserted defects and irregularities in the proceedings and attaching 36 exhibits, including correspondence with the arbitrator and Crow, the parties' submissions, the arbitrator's rulings and orders, and discovery materials.

Gearys filed an opposition with a declaration from La Mar addressing Nabil Chelico's narrative of the proceedings and attaching additional correspondence and party submissions.  Chris Aguirre, an information technology (IT) supervisor at La Mar's law firm submitted a declaration describing telephonic conversations he had with the arbitrator and with Crow on the morning of the evidentiary hearing regarding technical difficulties in connecting to the videoconference session.  Chelico filed a reply and evidentiary objections to Aguirre's declaration.

After a hearing, on April 11, 2023 the trial court denied Chelico's petition to vacate the award.  The court overruled Chelico's evidentiary objections and found Chelico failed to prove reasonable and objective bias by the arbitrator or AAA, explaining the arbitrator's and Crow's communications with the

---

[6]	We refer to the interim award and final award collectively as the award.

10

parties did not show favor to Gearys; the arbitrator did not have any improper ex parte communications with Gearys; and procedural hiccups, including the burst water pipe and videoconferencing issues, impacted the parties equally, if at all. The court also found the arbitrator's asserted legal errors were not subject to judicial review, and the award sufficiently addressed Chelico's wrongful termination claim.

On May 1, 2023 Gearys filed a form petition to confirm the award, attaching the signed agreement and award. A supporting attorney declaration attached a subpoena for AAA's documents relating to the burst water pipe and an April 14 email sent on behalf of counsel for AAA to La Mar, Nabil Chelico, and others attaching more than 40 photographs of water damage throughout AAA's office, internal correspondence concerning the office closure for repairs, and a certification of authentication of business records.

In his opposition, Chelico incorporated by reference the briefs and evidence filed in connection with his petition to vacate the award. Chelico objected to the AAA documents relating to the burst water pipe on the basis the certification of authentication was not properly attested to under California law, constituted hearsay, and lacked foundation.

After a hearing, on July 11, 2023 the trial court granted Gearys's petition to confirm the award. In its order and judgment, the court overruled Chelico's evidentiary objections and found Chelico raised no arguments beyond those the court rejected in denying Chelico's petition to vacate. The court entered judgment in favor of Gearys on the claims addressed in

11

the interim award in favor of Chelico for $17,795 in attorneys' fees and costs as set forth in the final award.[7]

Chelico timely appealed.

## DISCUSSION

A.    *The Trial Court Did Not Err in Compelling Arbitration*
    1.    *Law governing motions to compel arbitration and standard of review*

Code of Civil Procedure section 1281.2[8] requires a trial court to order arbitration of a controversy "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy . . . if it determines that an agreement to arbitrate the controversy exists." Accordingly, the threshold question is whether there is an agreement to arbitrate. (*American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. 228, 233 ["arbitration is a matter of contract"]; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (U.S.), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*) ["'"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."'"]; *Mar v. Perkins* (2024) 102 Cal.App.5th 201, 211 ["'As the language of this section makes plain, the threshold question

---

[7]    On August 28, 2023 the trial court entered an amended order and judgment. Chelico listed both the July 11, 2023 judgment and the August 28 amended judgment on his notice of appeal.

[8]    Further undesignated statutory references are to the Code of Civil Procedure.

12

presented by every petition to compel arbitration is whether an agreement to arbitrate exists.'"].)

The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence an agreement to arbitrate a dispute exists, and the party opposing arbitration bears the burden of proving unconscionability or other defenses. (*Pinnacle, supra*, 55 Cal.4th at p. 236; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.) "To carry this burden of persuasion the moving party must first produce 'prima facie evidence of a written agreement to arbitrate the controversy.' [Citations.] 'If the moving party meets its initial prima facie burden and the opposing party disputes the agreement, then . . . the opposing party bears the burden of producing evidence to challenge the authenticity of the agreement.' [Citations.] If the opposing party produces such evidence, then 'the moving party must establish with admissible evidence a valid arbitration agreement between the parties.'" (*Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1120; accord, *Mar v. Perkins, supra*, 102 Cal.App.5th at p. 211.)

"Absent conflicting evidence, we review de novo the trial court's interpretation of an arbitration agreement, including the determination whether it is enforceable on unconscionability grounds." (*Trinity v. Life Ins. Co. of North America, supra*, 78 Cal.App.5th at p. 1120; accord, *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 166.) Where the court's decision is based on findings of fact, we review the decision for substantial evidence. (*Trinity*, at p. 1121; *Gamboa*, at p. 266.) Finally, we review the court's decision whether to sever unconscionable terms from an agreement for abuse of

discretion.  (*Alberto v. Cambrian Homecare* (2023) 91 Cal.App.5th 482, 495; see Civ. Code, § 1670.5, subd. (a).)

> 2.  *Chelico's agreement to arbitrate, after severance of the attorneys' fees provision, was enforceable*

Chelico contends the trial court erred in compelling arbitration of his claims because he did not consent to arbitration, and the arbitration agreement was procedurally and substantively unconscionable.[9]  Chelico's first contention clearly lacks merit: it is undisputed Chelico (and Pickering) signed the two-page document entitled "agreement and acknowledgment" setting forth the terms of arbitration, which were also stated in the handbook.  Chelico asserts this was insufficient to form a contract because he only agreed in the first paragraph to read the handbook and in the second paragraph that his employment relationship was at will.  However, these express words of agreement were immediately followed by the specific terms of the

---

[9]  Gearys contends Chelico forfeited any challenge to the arbitrability of his claims because he did not list the July 1, 2021 order compelling arbitration in his notice of appeal.  However, an appeal from a final judgment generally permits review of earlier nonappealable orders.  (§ 906 ["[u]pon an appeal pursuant to [§§] 904.1 or 904.2, the reviewing court may review . . . any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party"]; see § 1294, subd. (a) [an aggrieved party may appeal from "[a]n order dismissing or denying a petition to compel arbitration"]; *Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 648 [order compelling arbitration may be reviewed only after entry of judgment confirming award].)

14

arbitration agreement, concluding with the statement that "[t]his policy contains the entire *agreement* between the [c]ompany and its employees . . . ." (Italics added.) In signing the document, Chelico manifested his assent to the terms clearly set forth between the language that Gearys and Chelico did "agree" and that their policy contained the entire "agreement." (See *Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 270-271 ["Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror."].)[10]

Because the parties entered an arbitration agreement, Chelico had the burden to show its unconscionability. (*Pinnacle, supra*, 55 Cal.4th at p. 236.) "Unconscionability has both a procedural and a substantive element." (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 492 (*Ramirez*); accord, *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125.) "Procedural unconscionability 'addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.'" (*Ramirez*, at p. 492.) "Substantive unconscionability looks beyond the circumstances of contract formation and considers 'the fairness of an agreement's actual terms' [citation], focusing on whether the contract will create unfair or one-sided results." (*Id.* at p. 493; accord, *OTO*, at p. 125.) "Both procedural and substantive elements must be

_____

[10] Chelico cites *Esparza v. Sand & Sea, Inc.* (2016) 2 Cal.App.5th 781 to argue an arbitration agreement within an employee handbook is not enforceable. But the handbook in that case expressly stated it was "'not intended to be a contract (express or implied), nor [was] it intended to otherwise create any legally enforceable obligations on the part of the [c]ompany or its employees.'" (*Id.* at p. 789.)

15

present to conclude a term is unconscionable, but these required elements need not be present to the same degree. [Citation.] Courts apply a sliding scale analysis under which 'the more substantively oppressive [a] term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" (*Ramirez*, at p. 493; accord, *OTO*, at p. 126 ["'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.'"].)

Procedural unconscionability "is generally established by showing the agreement is a contract of adhesion, i.e., a 'standardized contract which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" (*Ramirez, supra*, 16 Cal.5th at p. 492; accord, *OTO, L.L.C. v. Kho, supra*, 8 Cal.5th at p. 126 ["Arbitration contracts imposed as a condition of employment are typically adhesive."].) Moreover, if the "circumstances of the contract's formation created . . . oppression or surprise[,] . . . closer scrutiny of its overall fairness is required." (*OTO*, at p. 126.) "'"*Oppression* occurs where a contract involves lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a prolix printed form."'" (*Ibid*.)

Here, the agreement had at most a moderate degree of procedural unconscionability. The arbitration provision was adhesive: it was part of the employee handbook, and Chelico was required to stipulate that a violation of the handbook policies was grounds for termination. There is no reasonable likelihood that Chelico would have felt empowered to reject or negotiate the

16

terms of arbitration.  With respect to oppression and surprise, Chelico claims the arbitration provision was "buried" in the handbook and he was bombarded with onboarding documents in his 15-minute meeting with Pickering, but the arbitration provision appeared twice, under a prominent heading in the personnel policies and the two-page agreement directly above his signature.  Moreover, the trial court credited Pickering's testimony that Chelico had an opportunity to review the agreement but never asked questions or raised any concerns before signing it.

With respect to substantive unconscionability, in FEHA cases, which implicate the "basic principle of nonwaivability of statutory civil rights in the workplace," the Supreme Court has enumerated (and recently reaffirmed) "five minimum requirements for the lawful arbitration of such rights pursuant to a mandatory employment arbitration agreement." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 102 (*Armendariz*); accord, *Ramirez, supra*, 16 Cal.5th at p. 504.)  "Such an arbitration agreement is lawful if it '(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.  Thus, an employee who is made to use arbitration as a condition of employment "effectively may vindicate [his or her] statutory cause of action in the arbitral forum."'"  (*Armendariz*, at p. 102; accord, *Ramirez*, at p. 504.)

With the exception of the prevailing party attorneys' fees provision severed by the trial court, the arbitration provisions of the agreement satisfy the *Armendariz* factors, providing a neutral mechanism for selecting the arbitration forum; reasonable discovery including document demands, interrogatories, and depositions; a requirement for a written award; no limitation on Chelico's remedies; and Gearys's payment of the arbitration fees. Chelico argues the agreement is lopsided because it requires arbitration of employee claims against Gearys but not Gearys's claims against its employees. Not so: the agreement is expressly bilateral, stating "[a]ny controversy, dispute or claim *between* any employee and the [c]ompany . . . shall be settled by binding arbitration." (Italics added.)[11]

Chelico also contends the trial court erred in severing the prevailing party attorneys' fees provision and then compelling arbitration. Civil Code section 1670.5, subdivision (a), provides, "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to

---

[11] Chelico also argues the agreement allows modifications to the agreement without employee consent, citing a term that "[n]o employee or other [c]ompany representative can modify this agreement in any manner nor enter into any agreement that is contrary to this policy unless it is in writing and signed by the personnel department." (Capitalization omitted.) This language cannot reasonably be interpreted to subject an employee to a modified arbitration provision without the employee's consent.

avoid any unconscionable result." As the Supreme Court observed in *Armendariz,* "the statute appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement. But it also appears to contemplate the latter course only when an agreement is 'permeated' by unconscionability." (*Armendariz, supra,* 24 Cal.4th at p. 122.) Chelico contends the agreement was permeated with substantive unconscionability, but, as discussed, the prevailing party attorneys' fees provision was the only unconscionable term, and severance prevented Gearys (or any employer) from recovering attorneys' fees where the plaintiff's claims were not frivolous. The trial court therefore did not abuse its discretion in enforcing the agreement after severing the attorneys' fees provision with respect to Chelico's FEHA claims.

B.   *The Trial Court Did Not Err in Confirming the Award*
   1.   *Law governing confirmation of arbitration awards and standard of review*

"California law favors alternative dispute resolution as a viable means of resolving legal conflicts. 'Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration.'" (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916; accord, *Valencia v. Mendoza* (2024) 103 Cal.App.5th 427, 440 (*Valencia*).) The California Arbitration Act (CAA; § 1281 et seq.) provides "only limited grounds for judicial review of an arbitration award"; under the statute, "courts are authorized to vacate an award if it

19

was (1) procured by corruption, fraud, or undue means; (2) issued by corrupt arbitrators; (3) affected by prejudicial misconduct on the part of the arbitrators; or (4) in excess of the arbitrators' powers." (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1344, citing § 1286.2, subd. (a); see *Soni v. SimpleLayers, Inc.* (2019) 42 Cal.App.5th 1071, 1085-1286 [§ 1286.2 provides the "[e]xclusive grounds for vacating an arbitration award"].)

Section 1285.4 prescribes the requirements for a petition to confirm an arbitration award. "'A petition to confirm need only set forth (1) the names of the arbitrators, (2) the arbitration agreement (by description or attached copy), and (3) the award and written opinion of the arbitrators (by description or attached copy).'" (*Valencia, supra*, 103 Cal.App.5th at p. 442.) "If a petition . . . is duly served and filed, the court shall confirm the award as made, unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceedings." (§ 1286.) "Accordingly, once a petition to confirm that meets the statutory requirements has been served, "'the burden is on the party attacking the award to affirmatively establish the existence of error."'" (*Valencia*, at p. 442; accord, *Rivera v. Shivers* (2020) 54 Cal.App.5th 82, 94.)

"We review de novo a trial court order confirming an arbitration award, including its determination whether the arbitrator exceeded her powers in granting relief." (*Valencia, supra*, 103 Cal.App.5th at p. 442; see *Roussos v. Roussos* (2021) 60 Cal.App.5th 962, 973 ["""On appeal from an order confirming an arbitration award, we review the trial court's order (not the arbitration award) under a de novo standard."""].) However, we

20

review a trial court's determination of disputed factual issues for substantial evidence.  (*Roussos*, at p. 973.)

### 2.  *Chelico did not present evidence of corruption, bias, or prejudicial misconduct by the arbitrator*

Chelico contends the trial court erred in confirming the award because the arbitrator and AAA engaged in pervasive prejudicial misconduct and demonstrated corruption and bias against him.  (§ 1286.2, subd. (a)(1)-(3).)  There is no evidence of bias or corruption.

First, Chelico contends the arbitrator's communications relating to Gearys's summary adjudication motion showed incompetence and bias.  On May 27, 2022, after Gearys submitted a request for leave to file the motion, the arbitrator emailed Chelico to inquire whether he "[has] a view of this request," even though under a February 2022 scheduling stipulation the arbitrator had given Chelico until June 15 to respond to the request.  Then, when Gearys on June 28 asked the arbitrator when the parties should expect a ruling on Gearys's request, the arbitrator responded, "I thought I had already responded, but realize it was only in my head."  The arbitrator then granted Gearys permission to file the motion.

Nothing about these communications remotely shows bias, corruption, or misconduct; at most, they suggest the arbitrator at the time was inattentive or distracted.  And there was no prejudice to Chelico, who had a full opportunity to respond and successfully opposed summary adjudication.  Chelico also argues the arbitrator showed bias when she declined to sign his proposed order denying the summary adjudication motion, despite having signed an order sustaining a motion to dismiss.  But Chelico has

21

not identified any practical need for a signed order on the summary adjudication motion.

Second, Chelico points to the arbitrator's rulings on discovery and bifurcation of trial. He argues that in resolving a discovery dispute the arbitrator compelled him to produce an email containing attorney-client privileged information (after the arbitrator determined in camera that Chelico had already disclosed the redacted information). Chelico also argues that at the prehearing conference the arbitrator "on her own" bifurcated the hearing on liability and damages, which effectively rescinded the arbitrator's prior order requiring Gearys to produce documents on damages at the hearing. Even if these rulings were erroneous (which Chelico has not shown), the trial court correctly found that Chelico failed to "provide specifics as to the nature of the privileged material or how the production order or decision to bifurcate was allegedly motivated by bias."

Third, Chelico contends AAA showed bias against him when, six days before the evidentiary hearing (September 14), Crow advised the parties that AAA's Los Angeles office would be closed until October because of the burst water pipe. Chelico argues this was pretext to deny him an in-person hearing because the pipe burst in mid-August but AAA waited until the last minute to announce the closure. The evidence does not support an inference of impropriety. On the contrary, when Crow notified the parties about the office closure, she offered to "work on getting another location in or near our Los Angeles office or the parties can agree to another location." La Mar stated in her declaration that the arbitrator and attorneys had a conference on September 14 to discuss the situation. The arbitrator suggested the hearing could be conducted remotely, and Nabil Chelico did

22

not object, nor did he propose an alternative venue. Nabil Chelico objected to a remote hearing only after the arbitrator issued the interim award. The trial court credited La Mar's testimony and found Chelico failed to "explain how shifting the hearing to [remote videoconference] allegedly harmed his case or helped Gearys." We agree.

Finally, Chelico contends the arbitrator and Crow engaged in improper ex parte communications with a "supervisor" at La Mar's law firm. But this "supervisor" was the IT supervisor Aguirre, who averred he spoke with the arbitrator for about 40 seconds on the morning of September 14 after the hyperlink the arbitrator sent for the remote hearing session did not work. Aguirre then called Crow and spoke to her about the connectivity issue for less than two minutes. Aguirre was not an attorney, he had no knowledge of the dispute, the arbitrator, Nabil Chelico, or anyone at Gearys, and he did not discuss anything with the arbitrator except the connectivity issue. The arbitrator's extremely brief communication with an IT professional about a technical issue was not grounds for disqualification. (See *Grabowski v. Kaiser Foundation Health Plan, Inc.* (2021) 64 Cal.App.5th 67, 81 [arbitrator's failure to disclose an ex parte communication is grounds for vacating award under § 1286.2, subd. (a)(6), if the communication "could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial, thereby imposing the requirement of disclosure."].)[12]

_____

[12] On May 30, 2025 Gearys filed a motion for sanctions, requesting we award $73,318 in attorneys' fees pursuant to California Rules of Court, rule 8.276(a)(1), which authorizes

23

3. *The award was not reviewable for legal error*

Chelico contends the arbitrator committed "'egregious errors of law in violation of [his] statutory rights,'" and the trial court erred in refusing to review those errors. However, courts generally "'cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties.'" (*Law Finance Group, LLC v. Key (*2023) 14 Cal.5th 932, 957; accord, *Cable Connection, supra*, 44 Cal.4th at p. 1361 ["the general rule [is] that the merits of the award are not subject to judicial review"]; see *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 28 ["A contrary holding would permit the exception to swallow the rule of limited judicial review; a litigant could always contend the arbitrator erred and thus exceeded his powers."]; see also § 1286.2 [grounds for vacation of award, not including legal error].)

The Supreme Court has recognized some limited and "'exceptional circumstances justifying judicial review of an

_____

sanctions for "[t]aking a frivolous appeal or appealing solely to cause delay." We deny Gearys's motion. "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*Marriage of Flaherty* (1982) 31 Cal.3d 637, 650; accord, *Gazal v. Echeverry* (2024) 101 Cal.App.5th 34, 44.) Gearys argues that Chelico's accusations of arbitrator bias and corruption are outrageous and frivolous. Although we agree there was no evidence of bias or corruption, Chelico's challenges are not "indisputably" meritless, nor is there evidence Chelico had improper motives in pursuing the appeal.

arbitrator's decision'" where the award "violates a party's unwaivable statutory rights" or "contravenes an explicit legislative expression of public policy." (*Richey v. AutoNation, Inc., supra*, 60 Cal.4th at pp. 916-917.) Chelico's challenges to the arbitrator's substantive rulings do not fall within this exception. Chelico cites to *Pearson Dental Supplies, Inc v. Superior Court* (2010) 48 Cal.4th 665, 671-672, in which the arbitrator misapplied the CAA's tolling provisions to the plaintiff's FEHA claims to find the claims were untimely (and barred) without providing a written explanation. (*Pearson*, at pp. 671-672.) On these facts, the Supreme Court affirmed the trial court's order vacating the award, explaining that in the context of unlawful discrimination under FEHA, "an arbitrator whose legal error has barred an employee subject to a mandatory arbitration agreement *from obtaining a hearing on the merits* of a claim based on such right has exceeded his or her powers within the meaning of Code of Civil Procedure section 1286.2, subdivision (a)(4)." (*Pearson*, at p. 680, italics added.) The *Pearson* court declined to extend the exception beyond legal error that prevents a plaintiff from obtaining a hearing on the merits of a claim under FEHA or other unwaivable statutory rights. (*Pearson*, at pp. 679-680.) Here, Chelico received a hearing on the merits of each of his FEHA claims and simply argued the arbitrator misinterpreted FEHA's substantive requirements.[13]

_____

[13] Chelico claims the arbitrator made "egregious" errors of law, including purported holdings that a FEHA plaintiff who is already over 40 years old when hired cannot assert an age discrimination claim; a plaintiff can only show age discrimination where an older employee had applied for plaintiff's job before a younger replacement was hired; and a plaintiff must have

25

4. *The award included a complete determination of Chelico's wrongful termination claim*

Finally, Chelico contends the trial court erred in confirming the award because the award did not resolve his claim for wrongful termination in violation of FEHA. This claim too lacks merit. Code of Civil Procedure section 1283.4 requires, in relevant part, that an arbitration award "include a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy." "[W]here the record shows that an issue has been submitted to an arbitrator and that [the arbitrator] totally failed to consider it, such failure may constitute 'other conduct of the arbitrators contrary to the provisions of this title' justifying vacation of the award under section 1286.2, [subdivision (a)(5)]." (*Rodrigues v. Keller* (1980) 113 Cal.App.3d 838, 841; see *Heimlich v. Shivji* (2019) 7 Cal.5th 350, 364 ["'[f]ailure to find on all issues submitted is . . . a statutory ground for vacating an award'"].) "[I]t is presumed that all issues submitted for decision have been passed on and resolved, and the burden of proving otherwise is upon the party challenging the award." (*Rodrigues*, at p. 842; accord, *Herman Feil, Inc. v. Design Center of Los Angeles* (1988) 204 Cal.App.3d 1406, 1418.)

Chelico's claim for wrongful termination incorporated factual allegations common to all counts and summarily alleged "Gearys terminated [Chelico] from employment due to his age, race and national origin in violation of [FEHA]." On appeal,

---

applied for another job at the company to prevail on a claim for failure to promote.

Chelico argues the arbitrator failed to adjudicate his wrongful termination claim based on age discrimination, asserting the arbitrator at most "only adjudicated the race discrimination claim." A plain reading of the award shows otherwise. In the section of the award labeled "discrimination," the arbitrator first considered the evidence concerning Gearys's stated reason for terminating Chelico—the sale of the Rolex watch. The arbitrator then considered evidence of age discrimination, finding "no reasonable basis for [Chelico's] belief that he was discriminated [against] on the basis of age" and "no evidence that anyone either in the Century City store or the management group that made the discharge decision had made any comments about any employees' age, including [Chelico's]." The arbitrator next addressed discrimination based on race and national origin, although the arbitrator then returned to the issue of age, observing there was no evidence older applicants applied for Chelico's job before Gearys hired a younger replacement. After discussing both categories of alleged discrimination, the court concluded Chelico sold the watch in violation of company policy and "[t]here is no basis in this evidentiary record to conclude that his discharge was substantially motivated by discrimination." This resolved Chelico's wrongful termination claim in its entirely.

## DISPOSITION

The July 1, 2021 order compelling arbitration and the August 28, 2023 judgment are affirmed.  Gearys is to recover its costs on appeal.


FEUER, J.

We concur:


SEGAL, Acting P. J.


STONE, J.